DUNN, et al. *v.* ANDERSON, et al.

No. 39970 March 19, 1956 86 So. 2d 24

*Robert E. Covington, Jr.,* Quitman, for appellants.

*Nate S. Williamson,* Meridian; *E. C. Fishel,* Hatties-burg; *A. J. Reese,* Quitman, for appellees.

HALL, J.

On January 25, 1937, Muss Dunn, an old Negro, was the owner of 320 acres of land in Clarke County. His wife had died before that date and he was the father of twelve children. On the date named he executed three deeds, one to his son Vatin Dunn, one to his son, Samson A. Dunn, and one to his daughter, Ida McLendon, conveying to each of them an undivided one-fourth interest in said land. All of said land at that time was encumbered by a deed of trust to the Federal Land Bank, and each of said deeds obligated the grantee therein to assume and discharge one-fourth of the indebtedness due to the Federal Land Bank, as well as taxes and any other indebtedness due thereon. This left Muss Dunn still owning an undivided one-fourth interest in said land. He died intestate on May 21, 1938, and left surviving as his sole and only heirs-at-law the three children above-named as well as nine other children, and the undivided one-fourth interest owned by the deceased descended to the said twelve children so that the three above-named thereby became vested with the title to an undivided 13/48ths interest and the other nine to an undivided 1/48ths interest in said land.

Approximately five years after the death of Muss Dunn the heirs were badly in default on the indebtedness to the Federal Land Bank and then made arrangements with Robert Land to borrow sufficient money to satisfy the Land Bank, and they executed a deed of trust to the said Robert Land on June 8, 1943, to secure the amount for which they were indebted to him. This deed of trust was foreclosed on May 1, 1945, and Mr. Land bought the 320 acres at the foreclosure sale. Thereafterward the heirs of Muss Dunn employed counsel and instituted a suit in the District Court of the United States for the Eastern Division of the Southern District of Mississippi to have the trustees deed cancelled because of certain alleged defects in connection with the granting of the

security and the foreclosure thereof. Due to the crowded condition of the docket in the Federal Court, the said suit was pending therein for several years. Finally on September 23, 1952, all twelve of the heirs executed to J. A. Anderson a deed for the timber on said land, and J. A. Anderson undertook and finally consummated a settlement of the said suit in the Federal Court, with the result that on October 6, 1952, the said Robert Land executed to the twelve heirs a general quitclaim deed covering all his right, title and interest, in and to said land. Under that deed the heirs each became vested with an undivided one-twelfth interest therein instead of the interests hereinbefore numerated which they had formerly owned before foreclosure of the Robert Land deed of trust.

On May 25, 1954, Vatin Dunn, Lottie Dunn, and Ida Mae McLendon who is the same person as Ida McLendon, brought this suit against all of the other heirs, as well as against J. A. Anderson, Robert Land and others, and also against certain persons who in the meantime had acquired mineral interests in said lands. The general purpose of the bill was for a partition in kind of the surface rights, leaving the mineral interests in the entire tract as they then stood. There was also a prayer for cancellation of a note and deed of trust for $2,600 which had been executed by nine of the heirs to J. A. Anderson, and there was a prayer for recognition of deeds of trust which had been executed by Vatin Dunn and Ida Mae McLendon to Land Bros. and Company, a partnership firm in which Robert Land owned an interest, and there was a prayer for an injunction to prevent J. A. Anderson and the trustee in his deed of trust from foreclosing the security which had been given him on October 13, 1952. The bill prayed for an establishment of the interests of complainants in the surface rights as being that which was originally stated hereinabove.

██ █ The chancellor took two volumes of testimony on the hearing of the case and dismissed the bill, except as to the partition feature, from which action this appeal is prosecuted by Vatin Dunn, Lottie Dunn and Ida Mae McLendon. They contend, without the citation of any authority, that the settlement of the Federal Court suit with Robert Land amounted to no more than a mere extinguishment of his debt, and that the effect of the quitclaim deed from him back to the heirs amounted to no more than a revestment of the title in the proportions which had formerly existed. In other words, they contend that Vatin, Sampson and Ida Mae still own an undivided 13/48ths interest each in the surface rights and that the quitclaim deed from Robert Land, made several years after the foreclosure, inured to their benefit in the proportions stated. The chancellor found to the contrary and we think he was correct. Robert Land was vested with the title to this land for several years, and this is not a case where one cotenant has undertaken to redeem from a mortgage or to acquire an outstanding title to the common property. In 86 C.J.S., Tenancy in Common, Section 60, Par. b (3), p. 429, it is said: ''Where a cotenancy has been extinguished by a judicial sale of the property, as on foreclosure and expiration of the period of redemption, it has been held that the rule precluding a cotenant from acquiring a title to the common property for his own benefit does not apply in the absence of fraud or an agreement to acquire it for the common benefit, and the motives which prompted him to do so are immaterial * * *''.

 █ The burden of proof was on the complainants as to this issue and they failed to meet it. 86 C.J.S., Tenancy in Common, Section 99a, p. 502.

 █ The appellants also complain that the court erred in dismissing the bill as against J. A. Anderson and the trustee in his $2,600 deed of trust for the reason

that they say that the evidence received on this matter was in violation of the Statute of Frauds and the parol evidence rule. Vatin Dunn testified to begin with that he did not understand the $2,600 note and deed of trust, but on cross-examination he testified that Mr. Anderson told them that he would not pay over $6,000 for the timber and finally that Anderson said he did not think there was $8,000 timber there, and he said that it was his understanding that $8,000 was all that Mr. Anderson would assume to pay in settlement of the suit with Land. He also testified that he voluntarily executed the $2,600 note and deed of trust, and that he told the chancery clerk, before whom the deed of trust was acknowledged, that he knew what he was signing. He also detailed certain payments made to Anderson on the note. Lottie Dunn, another of the complainants, who admitted that she has been teaching school for fifteen or twenty years, testified that she signed the $2,600 note and deed of trust to Anderson and that she knew it was calling for more money to be paid to Mr. Anderson. Ida Mae McLendon, who has been teaching school for twenty-five years, testified that they all knew they had lost the 320 acres of land by foreclosure and that she executed the $2,600 note and deed of trust, and a year later she paid $250 thereon. We think the chancellor was justified in holding that Mr. Anderson had paid in settlement $2,000 more than he obligated himself to pay, and in addition thereto that he had made other advances, including a $500 fee to the attorney for the heirs. The record shows that nine of the heirs signed this note and deed of trust. It also shows that four of them are school teachers. Of the nine who signed these instruments, five did not testify, but summing up the evidence of the four who did testify, it seems to be reasonably clear that they all knew that they were obligating themselves to pay $2,600 and that they were granting a deed of trust on their interests to secure the same. There is no claim that

there were any fraudulent representations which induced them to execute the note and deed of trust nor that thy were induced to believe that their terms were different. There was not a sufficient showing to justify a cancellation of these instruments. Garrett v. Pigford, 218 Miss. 840, 67 So. 2d 885, and authorities therein cited.

██ ██ We have disposed of the main questions raised on this appeal. There is some complaint about the reception and exclusion of evidence, but such complaints are of such nature that we do not think they would change the result of the decision on another trial, even if they are meritorious, and the decree of the lower court will therefore be affirmed and the cause remanded so that the lower court may proceed with the partition ordered in the final decree. There has been filed a motion to dismiss this appeal but we have gone to the merits of the case rather than consider the motion.

Affirmed and remanded.

*Roberds, P. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.